HARVEY HUTCHINSON *v.* AMOS HUTCHINSON.

A guardian, who contracts with another person to support his ward, and does not attempt to limit the right of such person to the estate of the ward for indemnity, is himself personally liable upon such contract.

In this case the defendant, who was guardian of a person *non compos mentis*, contracted with the plaintiff to board the ward at $1,50 per week; but no time was fixed for the duration of the contract; at the end of a year the plaintiff informed the defendant, that he would not board the ward longer for less than $2,00 per week, and that he must take the ward away; the defendant attempted to remove the ward, but he was unwilling to leave; but the plaintiff still insisted that the defendant should remove the ward, unless he would pay $2,00 per week for his board; the defendant made no direct promise to allow more than $1,50 per week, but neglected to take the ward away; and it was held, that it must be taken that the defendant acquiesced in the additional price claimed by the plaintiff, and that he was liable therefor.

But, it appearing that the plaintiff had never given notice to the defendant, that he should charge more than $2,00 per week for keeping the ward, it was held, that he was not entitled to charge the defendant for extra services about the ward, such as repairing bedding and clothing, extra washing, care when sick, and the trouble and expense of his burial.

BOOK ACCOUNT. Judgment to account was rendered, and an auditor was appointed, who reported the facts substantially as follows.

The items of the plaintiff's account, in reference to which controversy was had in the supreme court, were for boarding one Frederick White from March 26, 1836, to May 7, 1837, at $1,50 per week, and from May 7, 1837, to the time of his death, which was March 18, 1842, at $2,00 per week, and for extra services in taking care of said White,—such as repairing bedding and clothing, extra washing, care when sick, and the trouble and expense of his burial.

It appeared, that the defendant was appointed guardian of White in 1823, and that he continued such guardianship until the death of White. In March, 1826, the defendant agreed with the plaintiff to keep White for $1,50 per week. No time was agreed upon, and nothing was said between them how or when the plaintiff should be

paid, nor as to the capacity in which the defendant was acting, nor whether the defendant should be personally liable to the plaintiff for the keeping of White, nor whether the plaintiff should look to White, or the property of White in the hands of his guardian, for his pay. White had property, which was then known to the plaintiff; and the plaintiff also knew, that the defendant then was and for some years had been guardian of White. Immediately after this contract was made the plaintiff took White and kept him the length of time and rendered the services charged for in his account. About the seventh day of May, 1837, the plaintiff gave the defendant notice, that he must take away White, as it was inconvenient to keep him longer, and that he would not keep him longer for less than two dollars per week. The defendant went to the plaintiff's house for the purpose of removing White; but White was unwilling to go, and the defendant left without him; but the plaintiff, upon meeting the defendant, again told him, that he must take White away, that he did not wish to keep him any longer, and that he would not keep him longer for less than two dollars per week. No express promise was ever made by the defendant, to give the plaintiff more than $1,50 per week for keeping White; but he neglected to take White away, or to provide any other place for him. The plaintiff never gave the defendant notice, that he should charge more than two dollars per week for keeping White.

After the death of White the defendant requested the plaintiff to present his claim for allowance for keeping White to the commissioners on White's estate. The plaintiff at that time insisted, that his claim for keeping White was against the defendant, and not against White's estate; and, owing to a dispute between them about the contract, the plaintiff refused to present any claim to the commissioners. The defendant, after this refusal, presented a claim to the commisioners for the keeping of White by the plaintiff, at $1,50 per week for the whole time the plaintiff kept him; and that sum was allowed by the commissioners to the defendant. Upon settling White's estate there appeared to be property sufficient to pay all the debts, as allowed by the commissioners, and the expenses of administration, except about nine dollars.

Upon these facts the county court, December Term, 1846,— REDFIELD, J., presiding,—allowed these items in the plaintiff's account, as charged. Exceptions by defendant.

Hutchinson *v.* Hutchinson.

*J. S. Marcy* and *L. B. Peck* for defendant.

1. A guardian is the mere agent of his ward, having an authority not coupled with an interest. 2 U. S. Dig. 150. 13 Pick. 206. When a person is known to act as agent, and his principal is known, the agent is not personally responsible. Ham. on Ag. 324. 8 Pick. 56. *Cheney* v. *Clark*, 3 Vt. 431. *Abbott* v. *Cobb*, 17 Vt. 593. It is believed, that, where one is legally an agent, which *ex vi termini* includes authority, he cannot be personally bound by any thing short of an express engagement to that effect, or some manifestation, or intimation, from which the other party might infer an intention to become personally responsible; certainly not, at least, without the practice of some artifice, calculated to lead the other party to believe such was the intention. In this case the defendant had been for many years guardian of White; and this was known to the plaintiff. White had, at the time of the contract, ample property, which was chargeable for his support, and which rendered any farther security unnecessary; and not only was the contract for White's sole benefit, but his *personal support* was the *subject matter* of it. And under such circumstances it is unnatural to suppose that the responsibility of the defendant was expected or intended to be incurred. A guardian is not liable, except upon his express contract. *Tucker* v. *McRee*, 1 Bayl. 344. *Penfield* v. *Savage*, 2 Conn. 386. 2 U. S. Dig. 482, *pl.* 124; 483, *pl.* 154.

2. The plaintiff cannot recover more than the price agreed upon; the subsequent acts of the plaintiff did not rescind, or alter, the original bargain. *Aldrich* v. *Londonderry*, 5 Vt. 441.

3. The plaintiff never gave any notice, that he should charge for the extra expenses, or services, included in his account; and the defendant had a right to expect, that the price per week was to pay for all that White had. 2 U. S. Dig. 482, *pl.* 124; 483, *pl.* 153, 154. 13 Pick. 406.

*Hebard & Steele* for plaintiff.

1. The plaintiff insists, as matter of *law*, that the defendant made himself liable for the amount of the services rendered. He did not attempt to excuse himself from the fulfilment of the contract, when making it. He could, by his contract, bind none but himself; *Thacher* v. *Dinsmore*, 5 Mass. 299. The credit is always given to

the guardian personally; he knows whether he has the means for paying the debts, which he contracts ; and others have no means of knowing.   The fact, that the plaintiff knew that the defendant was guardian, could make no difference; a guardian stands *in loco parentis*, and contracts for his ward as a parent doos for his child; and each is equally holden for his contract; *Forster* v. *Fuller*, 6 Mass. 58 ; *Collard* v. *Crane*, Brayt. 18 ; *Thompson* v. *Boardman et al.*, 1 Vt. 367 ; *Lovell* v. *Field et al.*, 5 Vt. 218 ; *Wheelock* v. *Wheelock*, 5 Vt. 423.   The guardian has an *interest* in his ward's estate and not a mere *authority*, or office; he has such an *authority*, coupled with an *interest*, as enables him to recover his ward's estate by suit; *Thompson* v. *Boardman, ub. sup.*; *Byrne* v. *Van Hoesen*, 5 Johns. 67 ; *King* v. *Inh. of Oakley*, 10 East 491.   Guardians and administrators are liable personally for costs.

2. The defendant made himself liable, as matter of *fact*, by the manner in which he contracted with the plaintiff.

3. The defendant was liable to pay the advanced price, claimed by the plaintiff, upon an implied promise to that effect.   When the plaintiff told him, that he would not keep White any longer for less than $2,00 per week, and the defendant suffered White to remain there, the law will imply a promise to pay that sum.

4. The objection to the allowance of the items for extra expenses and services is a question of fact, and cannot be examined by this court.

The opinion of the court was delivered by

HALL, J.   It is objected in the first place, in behalf of the defendant, that, in making the contract for the keeping of the ward, he is to be considered as having acted in the character of an agent of the ward, and not to have bound himself personally, but only the estate of the ward,—it appearing that the plaintiff had full knowledge that he was guardian.

It is not found by the auditor, that, at the time of the making of the contract for the board of the ward, the defendant undertook to limit the right of the plaintiff to the estate of the ward, for his indemnity ; and I have not been able to entertain any doubt, that the liability of the guardian, under such circumstances, is personal. The guardian has the possession and control of the estate of the

ward, for the purposes of his support and maintenance, and has the power of indemnifying himself out of such estate for any proper contracts he may make. It is his business to know the amount and situation of the estate; and he is not obliged to incur any liability beyond it. If he do so, it is his own fault, for which others, who cannot be supposed to be so well possessed of this knowledge, ought not to suffer. We therefore think the defendant is personally liable and the action properly brought.

Upon the other principal question in the case,—whether the plaintiff can be allowed more than $1,50 per week, for the keeping of the ward,—we have not been without considerable doubt. The defendant never made any direct promise to give the plaintiff over $1,50 per week, but neglected to take the ward away, and suffered him to remain with the plaintiff until the time of his death, although notified, at the end of a year, that the plaintiff would not keep him longer for less than $2,00 per week. On the whole, considering that the defendant was entitled to the legal custody of the ward, and that it was his duty to provide a place for his support, and considering that the plaintiff, notwithstanding the refusal of the ward to leave his house, insisted upon the defendant's taking him away, unless he would pay the $2,00 per week, and especially considering, that the defendant gave no notice to the plaintiff to return the ward to the defendant's custody, and made no claim, that it was not his own duty to go after him, we are of opinion, that the defendant is to be treated as having acquiesced in the claim of the plaintiff for the additional price, and consequently, that the judgment of the county court is right, in allowing the $2,00 per week found by the auditor.

The report farther finds, that the plaintiff never gave the defendant notice, that he should charge more than $2,00 per week for keeping the ward; and we think no contract of the defendant is shown, for the payment of the several charges for extra services in his keeping, which were disputed before the auditor, but included in the judgment of the county court. The judgment of the county court is therefore reversed, and judgment is to be rendered for the plaintiff for the sum found by the auditor, lessened by the amount of those charges.