## COOK *v.* BENNETT, EX'R.

The report of the commissioner upon the claim of a creditor against the estate of a deceased person administered as insolvent, is not evidence upon the trial of an appeal from the decision of said commissioner.

The question whether the proposed testimony of a wife in favor of her husband would lead to a violation of marital confidence, is a question of fact for the presiding judge to determine in the exercise of his judicial discretion; and his decision thereof is not subject to exception or revision.

Judicial discretion is defined in the case of *Bundy* v. *Hyde*, 50 N. H. 117.

In an action to recover of a guardian for the board and care of his ward, evidence that the guardian promised, voluntarily, to pay a third person,—a physician,—for medical services rendered for the ward while boarding with the plaintiff, is competent, both as tending to show that the guardian had in his possession and control property of his ward, and also upon the question of the probability whether the guardian, who recognized his liability to pay for his ward's medical necessaries, did not also consider himself liable to pay for her board.

The instruction of the court to the jury, that "whether the testator had or did not have property of his ward, as well as the amount of such property, was material in no other view except as it bore upon the probability or improbability of his making the contract to pay for her board as claimed by the plaintiff," was correct.

THIS was an appeal of John Cook from the report of the commissioner, disallowing a claim of the plaintiff against the estate of the deceased, John P. Bennett, for the board and care of one Mina C. Bennett, a minor daughter of the plaintiff's wife by a former husband, for six years next before the testator's death, which occurred in the fall of 1869. Said Mina C. Bennett was a daughter of Benjamin F. Bennett, who was a brother of William P. Bennett, executor of the estate of said

John P. Bennett. William P. Bennett was appointed guardian of his said niece May 23, 1862, and continued to hold that trust till the time of his death. The plaintiff married Benjamin F. Bennett's widow, the mother of Mina C., in February, 1863, and upon said marriage the child was taken home and lived with them, and was supported and cared for there, substantially as a member of the family. Subject to the defendant's exception, Martha E. Cook, the wife and mother, was permitted to testify to conversations between herself (after her marriage to the plaintiff) and said William P. Bennett, tending to prove a promise on the part of said Bennett to pay for the board of said Mina ; and that said Bennett came to the plaintiff's house several times, and promised, in the absence of the plaintiff, to pay the child's board.

Against the defendant's objection, Dr. Elkins, not having been employed by William P. Bennett, was permitted to testify that he attended said Mina C. at the house of said Cook, while suffering with a broken leg, and that his bill for such attendance was between $20 and $25 ; that he had a talk with said William P. about his said bill. " Said William P. asked me how much my bill was ; said he supposed I had a bill against him for attending Mina, as he was her guardian.. I had never seen Bennett before. He came to me voluntarily. I told him I would look it up. He said he was not prepared to pay it then, but should probably be down in a little while, and would then pay it. I have attended the child for an acute inflammation of the. eye."

The appeal and declaration were in proper form, but the defendant objected that the report of the commissioner should be produced before the plaintiff could be allowed to proceed with his evidence. The court ruled otherwise, and the cause went to the jury with no evidence that the claim had ever been presented to the commissioner, except what was furnished by the appeal ; and the defendant excepted.

The court instructed the jury that the only question for them to pass upon was, upon what terms the child was living in the plaintiff's family ; that in order to recover, the plaintiff must satisfy the jury that William P. Bennett, in his lifetime, entered into a contract with the plaintiff to pay him for boarding the child ; *that is*, that it was the *understanding* of both parties that the deceased was to pay, and the plaintiff to receive pay therefor, and that the plaintiff could only recover for boarding her while such contract or understanding existed.

That express words are not always necessary to the making of a contract, but a contract may be inferred from the conduct of the parties ; that they should consider all the circumstances that were shown before them, in connection with the testimony of the witnesses, and say whether it was the understanding of both parties that William P. Bennett should pay the plaintiff for boarding the child ; that if there was such an understanding, then the plaintiff would be entitled to recover what the board was reasonably worth.

Much evidence was introduced, upon both sides, to show how much property, if any, belonging to his ward said William P. Bennett received, and what became of it.

The court instructed the jury that whether William P. Bennett had or did not have property of his ward, as well as the amount of such property, was material in no other view except as it bore upon the probability or improbability of his making the contract to pay for her board as claimed by the plaintiff; and to this instruction the defendant excepted.

There was no evidence that when Cook first took the child to his house it was with any understanding or agreement with the guardian that he should be paid for her board. And the court did not give any instructions as to the liability of Cook to maintain her while a member of his family, or of the liability of the guardian for her support, except as above.

The jury returned a verdict for the plaintiff, which the defendant moved to set aside for the causes above stated.

*Small*, for the defendant.

I. The wife of the plaintiff was improperly admitted as a witness to the facts about which she testified. She could have been admitted as a witness only upon the ground that her examination upon the points to which her testimony was offered would not lead to any violation of marital confidence.

This term, " marital confidence," I submit, must be regarded as applying to all communications between husband and wife, of every description. The wife will stand, then, under our statute, as the widow did at common law ; and there she could not be allowed to testify to any communications or conversations between herself and her husband, or to disclose any knowledge which she had derived from him as his wife. 1 Greenl. Ev., sec. 337 ; 1 Phillips Ev., sec. 79 ; 1 Black. Com. 444, see note ; *French* v. *French*, 14 Gray 188 ; *Coffin* v. *Jones*, 13 Pick. 445 ; *Ryan* v. *Follansbee*, 47 N. H. 100 ; *Jackson* v. *Barron*, 37 N. H. 494 ; *Pike* v. *Hayes*, 14 N. H. 19.

Any other rule than this would be extremely difficult of application. It would introduce a separate issue in each case, to be settled by the court, as to whether or not the communication in question was, in fact, confidential. And what guide could the court have in such cases to lead them to a correct result ? These conversations, testified to by Mrs. Cook, could be evidence only upon the ground that she was acting as the agent of the plaintiff, her husband ; or, that the declarations of Bennett were communicated to the husband, and assented and agreed to by him ; for, in order to recover, the plaintiff must in some way prove a contract with himself ; and if the evidence was not competent as tending to prove a contract with himself, then it was immaterial and inadmissible. And in any event this testimony on the part of the wife must have led, in cross-examination, to conversations and communications between the husband and wife regarding this very agreement, and to be excluded by the statute ; for under this statute it is unimportant that the evidence in the *first instance* does not disclose communi-

cations between husband and wife, but it is enough that the court can see that it will lead, under the rules governing cross-examinations, to such conversations.

II. The testimony of Dr. Elkins was clearly incompetent.

This guardian was not liable, except by his express contract, for the board or for medical services rendered to his ward. *Edmunds* v. *Davis,* 1 Hill S. C. 279 ; *Tucker* v. *McKee,* 1 Bailey 344, 2 U. S. Dig. 482.

The evidence of Dr. Elkins had no tendency to show that the guardian ever contracted to pay the board, if it tended to show a contract to pay for the medical services ; yet the fact that the guardian made that special contract, had no tendency to show that he made another.

The evidence might have a tendency to show that W. P. Bennett was acting as guardian ; but that fact did not tend to show that he made the contract for the ward's board.

III. The instructions of the court to the jury upon the question as to whether William P. Bennett had or had not property of his ward, were erroneous.

Keeping in mind that the guardian was liable only upon his express contract, how did the fact that the guardian had or had not property of his ward tend to prove any such contract ? It had nothing to do with the question. The effect of the instructions was, that if the guardian had property of his ward, that fact would render it more probable that he made the contract in question.

If such is the law, it would be competent in every case of express contract to prove the financial standing of the defendant.

The ward herself was competent to contract for her necessaries, in the absence of supplies by her guardian, and to bind her property in his hands to that extent ; and upon that issue, the question of property or not would be material,—certainly, not in this.

The court should have instructed the jury that the plaintiff, having taken the child to his house and into his family with her mother when he married her, was responsible for the board and maintenance of the child so long as she lived with him.    2 Kent 191.

And that, therefore, a promise to pay for past board would be without consideration, and that the plaintiff could recover only for board furnished the child upon the faith of the guardian's promise.

IV. The report of the commissioner, or a copy of it, should have been produced before the plaintiff proceeded with his evidence ; otherwise, how could it be shown, by any competent evidence, that the claim before the court was the same claim that was presented to the commissioner, or a different one ?    *Rich* v. *Eldridge,* 42 N. H. 246.

Besides, the proceedings before the commissioner are among the material allegations in the plaintiff's declaration, and consequently must have been proved.

The court had only an appellate jurisdiction, and consequently the proceeding before the commissioner must be shown in order to give the court jurisdiction.

*Hatch*, for the plaintiff.

I. Mrs. Cook was called as a witness, without objection on the part the defendant. He had testified himself in the cause. The question is only as to the matters on which she was examined. And they were simply conversations with deceased, *in the absence of her husband*. These conversations showed a promise of deceased to pay the board of the child. It is immaterial whether these conversations were reported to her husband ; and the case does not show that they were ever reported to him. The testimony did not lead to any violation of marital confidence. The testimony was competent as an admission, or confession of the deceased. 1 Phillips Ev. 107 ; 1 Green. Ev., sec. 191.

The statute leaves the presiding judge to exercise his discretion as to the admission of the wife's testimony, and it cannot be revised. Gen. Statutes, ch. 209, sec. 22.

II. The fact that the deceased held himself responsible to pay for medical attendance upon the child while she was at the plaintiff's house, as testified by Dr. Elkins, tended to confirm the evidence of the plaintiff that the deceased had promised to pay for the board of the child. It tended to show that the deceased, as guardian, had property of the child in his hands—a fact much in controversy at the trial. The services of Dr. Elkins were not rendered at the request of the deceased guardian, and the deceased went voluntarily to Dr. Elkins afterwards to pay the bill. This conduct is explained by the evidence of the plaintiff that the deceased had promised to pay the board, &c., of the child ; and equally corroborates that evidence, and makes it more probable that the deceased did promise as alleged by the plaintiff.

III. (1) The instructions to the jury expressly limited the right of the plaintiff to recover, to the time while a contract or understanding between him and the deceased existed.

(2) Evidence was introduced by both parties as to the amount of the property of the child in the guardian's hands, and without exception. It is too late for the defendant to pretend it was immaterial, or to complain that the court gave heed and effect to it.

(3) And it was not immaterial. For it is much more probable that the deceased would have promised to pay the board of the child if he had in his hands funds belonging to her, than if he had none. In fact, the defendant introduced this kind of evidence—a fact which we pray may be added to the case. The rebuttal was stronger than the defendant desired ; but the evidence, by whichever party introduced, was as pertinent as the proof that he was guardian of the child ; that he was her near relative ; that he often called, and manifested interest in the child ; that the plaintiff was in law a mere stranger to her, &c., &c. 1 Green. Ev., sec. 44 ; Wills on Circumstantial Ev. 27 & 57 (ch. 3, part 1, sec. 1, on Motives) ; Best on Presumptions of Law & Fact 42, 43.

(4) And we contend that the fact that the guardian had sufficient property of the ward is sufficient evidence of an implied promise on his part to pay for her board and other necessaries. He is in the

condition of an administrator having assets. If a promise to pay for necessaries is to be implied against the ward, it seems reasonable to imply a similar promise on the part of the guardian to do his duty by applying the property of the ward to her necessary support. In *Fiske* v. *Lincoln*, 19 Pick. 473, 476, the supreme court of Massachusetts went further, and held that it was not only the right but the duty of the guardian to see that his ward did not suffer, though the ward was in fact a pauper. See, also, *Clark* v. *Clark*, 8 Paige Ch. 152.

IV. (1) The report of the commissioner of insolvency was not evidence for the jury. The appeal alleges a presentation of the plaintiff's claim to the commissioner, its disallowance, a report, acceptance by the probate court, &c. If any of those allegations were false, the defendant should have proceeded by plea in abatement, motion to dismiss or quash, or in some similar manner. The declaration counts upon the promises of the deceased, but makes no allusion to the proceedings before the commissioner. The plea, which is the general issue, traverses nothing but the promises. If in a suit at common law the plaintiff had filed a declaration without a writ, it could not be alleged in error that the writ was not produced and read to the jury. If the report had been at hand and produced, the court could only have told the jury that the appeal is or is not well taken. The court can decide the same question now with precisely the same effect.

(2) The reading of the report to the jury could only have tended to prejudice the plaintiff by showing that the commissioner had rejected his claim. It could not have been read against the plaintiff's objection.

FOSTER, J. The law provides that any creditor, dissatisfied with the report of the commissioner of insolvency to whom his claim has been submitted, may appeal therefrom by petition to the judge of probate ; and that he shall file with his petition " a declaration, in proper form, upon his claim." A copy of the petition and declaration is required to be served upon the administrator, and the creditor must " enter his action at the next trial term of the supreme court, and produce attested copies of the petition, declaration, and order of notice." Gen. Stats., ch. 181, secs. 1, 2.

It appears from the case that the appeal and declaration were in proper form, and there is no suggestion that any requirement of the statute was not complied with ; but the defendant insists that the report of the commissioner should have been produced upon the trial, before the plaintiff could be allowed to proceed with his evidence, and that, without the production of such report, it is not apparent that the court had jurisdiction of the cause.

But the jurisdiction is conferred by the statute above referred to, which does not require the report, but only copies of the petition, declaration, and order of notice, with evidence of the compliance with such order, to be filed.

And the report is not, like the report of an auditor, made evidence, by statute, in the trial.

The petition sets forth the substance and the amount of the creditor's claim, and states whether it was entirely disallowed, or allowed in part, and so furnishes all the information which would be provided by the commissioner's report.

The declaration contains a specification of the creditor's claim.

The report was not evidence for the jury. It ought to be excluded; for it could have no other effect than to prejudice the plaintiff, by showing that another tribunal, upon evidence with which the jury have nothing to do, and of which they have no knowledge, have rejected the plaintiff's claim.

The declaration, like the declaration in an original suit, counts upon the promise of the deceased, and nothing else; and the plea of the general issue traverses nothing but such promise.

The effect of the appeal is to suspend the judgment below. The appeal is a continuation of the original suit, for the purpose of obtaining, in the appellate court, a new trial and a new judgment. It is analogous in its effect to an award of a new trial, by which the previous verdict is entirely set aside, and the case is to be heard anew, like an original action, and as if no judgment had been pronounced or rendered in the court below. Hilliard on New Trials 587, and note *a*, 593–595; *Wallace* v. *Brown*, 25 N. H. 216; *Bixby* v. *Harris*, 26 N. H. 128; *Stalbird* v. *Beattie*, 36 N. H. 456.

Moreover, the defendant's objection, if it were ever available, comes too late. The appeal alleges the appointment of the commissioner, the exhibition of the creditor's claim, its disallowance, a report by the commissioner, and its acceptance by the probate court.

Any objection for want of regularity in these essentials should be made by plea in abatement, or motion to dismiss or quash; or, perhaps, by a rule against the judge of probate or the commissioner, to send up a corrected transcript of the proceedings. And such plea or motion must be made without delay. Hilliard on New Trials 597–610; *State* v. *White*, 41 N. H. 194.

II. In this State the wife may testify for or against the husband in any case, when it appears to the court that her examination as a witness upon the points to which her testimony is offered would not lead to a violation of marital confidence.

Mrs. Cook being sworn as a witness, without objection, was permitted, subject to the defendants' exception, to testify to conversations between herself and the child's guardian, in the absence of her husband, tending to prove a promise on the part of the guardian to pay for the child's board.

If such testimony were offered as the substantive and only proof of a contract, it should certainly be received, if at all, with great caution and hesitation; for it would seem to lead, upon cross-examination of the witness, to an inquiry concerning her communications with her husband on the subject;—the material question being whether the promise of the guardian was made to the husband through the agency of his wife; or, perhaps, whether through her communications to him, the

plaintiff and the guardian were brought to that mutual and similar understanding essential to the implication of a promise, in the absence of an express contract.

We are not disposed to relax the wholesome guards which the common law has imposed for the protection of the sanctity of marital confidence, and we are inclined to think the safer rule would be to reject altogether evidence of any conversation whatever between husband and wife in the absence of third parties.

But, whether wisely or not, the legislature has given the court unlimited discretion with regard to the acceptance or rejection of the evidence in a case like this. The wife may testify, says the statute, "in any case, *when it appears to the court*" that her examination would not lead to a violation of marital confidence. Gen. Stats., ch. 209, sec. 22;* Laws of 1870, ch. 20. The court has the same discretion as in cases of the admissibility of leading questions, and as concerning the qualifications of a witness offered as an expert. See *Bundy* v. *Hyde*, 50 N. H. 116 ; *Dole* v. *Johnson*, 50 N. H. 452.

It does not appear that the discretion of the court was imprudently exercised in the present case. The testimony of Mrs. Cook was, clearly, not the substantive and essential proof upon which a contract

---

* The court, in *John Corson* and *Ellen Corson* (wife of John Corson) against *Garrett Murinane*, decided at the March (adj.) term for Merrimack county, 1870, gave a construction to this section in two respects.

The action was assumpsit for money alleged to have been lent by Mrs. Corson to her father, the defendant.

Mrs. Corson was allowed at the trial to testify (subject to exception) that she had at different times lent certain sums of money to her father; that until about the time of the institution of this suit—a period of about eleven years—she had never had any conversation with her husband in relation to these transactions; and that he knew nothing of them, &c. There was no testimony, aside from that of Mrs. Corson, which had any bearing upon the question whether or not her "examination as a witness in relation thereto would lead to a violation of marital confidence."

The court (opinion by Doe, J.) *held,*—

1. That Mrs. Corson was a competent witness, to show herself a competent witness-in-chief.

2. That although the words of this section were, "the wife may testify *for* the husband," &c.,—when once a witness, she became so for all purposes, whether *for* or *against* her husband.

*Pike & Blodgett*, for the plaintiff.

*Shirley* and *Eastman*, for the defendant.

was based. And it does not appear from the case, nor is it at all essential to the relevancy or the materiality of the evidence, that the declarations of the guardian to Mrs. Cook should be reported to the husband at all.

Under the clear and unexceptionable instructions of the court as to the understanding of both parties being essential to the existence of a contract (see *Delano* v. *Goodwin*, 48 N. H. 206), the evidence was competent and material, not as being the promise and the act of a party in making the contract, but as the admission and confession of one party as to his understanding of the matter.

It must be quite clear that a promise to pay, if under certain circumstances such promise would not be admissible as evidence of a special contract, may, nevertheless, be received as an admission of liability, or, at any rate, as showing the understanding of the party uttering the declaration called a promise. The form of the declaration cannot determine the competency of the evidence, if, upon the whole, it contains anything from which the jury may be at liberty to find the understanding of the party. And " although the issue on trial is whether there has been a concurrence in understanding·of two parties, yet it is not improper to prove separately the understanding of each. It is no objection to a single piece of evidence that it does not make out the whole of the plaintiff's case. In proving a concurrence of understandings, the plaintiff may prove his own understanding by .one witness, and the defendant's understanding by another witness." *Blake* v. *White*, 13 N. H. 272 ; *Hale* v. *Taylor*, 45 N. H. 407 ; *Delano* v. *Goodwin*, 48 N. H. 206.

Without violation of marital confidence, it would seem that the wife might testify as to a contract made directly with her, in her husband's absence (so it is provided by statute in Massachusetts ; and our statute is more general and liberal) ; and the jury might be at liberty to find a special contract, by the defendant with the plaintiff, through the agency of his wife ; or, the promise to the wife may be regarded only as an admission of liability. Then, if the husband knew that the board was furnished in such a manner as to imply a contract to pay, in case there had been no express contract, he was also a competent witness to testify what he knew. He could not be required to elect whether he will rely on an express or an implied contract. He has a right to put in all the competent evidence he can produce, bearing in either direction. *Packard* v. *Reynolds*, 100 Mass. 155.

III. The testimony of Dr. Elkins was competent as tending to show that the guardian held property of his ward with which to pay for medical services, and as illustrating the conduct of the guardian with regard to the maintenance of the child. It is undoubtedly true, as the defendant claims, that the fact that the guardian made one special contract, does not prove that he made another ; but we think the evidence was competent, whatever weight it might have with the jury, upon the question of the probability whether the guardian, who recognized his liability to pay for his ward's medical necessaries, did not

also consider himself liable to pay for her board.    See *Delano* v. *Goodwin*, before cited.

IV. It was the duty of the guardian to apply the income of his ward's property, and even the principal, if necessary (under advice of the court, perhaps, first obtained), to supply the absolute necessities of his ward.    *Fiske* v. *Lincoln*, 19 Pick. 476 ;  *Clark* v. *Clark*, 8 Paige Ch. 152 ;  *Hutchinson* v. *Hutchinson*, 19 Vt. 437 ;  Schoul. Dom. Rel. 455.

It was competent and material to show that he held property of the ward sufficient to enable him to supply her wants, for such fact would tend strongly to show and to support the probability that he agreed to pay for her board.

Upon this, as upon all the other points raised by the defendant, we are of the opinion that the rulings of the court were correct, and the instructions to the jury unexceptionable.

*Judgment on the verdict.*